18-14980 MSPA Claims 1, LLC v. Kingsway Amigo Insurance Company Mr. Zincone. Good morning. May it please the Court. Francesco Zincone here on behalf of the appellant, the plaintiff below MSPA Claims 1, LLC. The question before this Court will have a significant impact on Medicare recoveries under the MSP Act. The appellee, together with the private no-fault and liability insurance communities, here seek to take the administrative burden of Medicare reimbursement off of their shoulders and shift it to Medicare. The construction of the statute, which was adopted by the Court in the proceeding below, is squarely at odds with the overarching and overriding principle of the MSP Act, together with the well-documented purpose of the claims filing provision itself. Tell me if you, and then you can get into your statutory argument, but if you are right about which clause governs, why are you timely, at least insofar as the complaint is concerned? Why did you file within that three-year window specified in BIII? The time period specified in sub BIII is expressly identified as the statute of limitations with respect to the government's right of action, and here we've applied it with respect to the private cause of action under 1395YB3A. The reason that this case is timely is because the period where the claims filing provision is not, in fact, a limitations period. It wasn't imposed as a limitation upon Congress at its own volition for the benefit of the private insurance. No, I know, I'm assuming you're right. I want to know if you are correct about which clause governs, why, according to the complaint, was your claim or your lawsuit timely? As alleged in the complaint, and as reflected in BIII, the trigger for the government's cause of action is notice. Notice provided under section 1395YB8, which places an affirmative obligation on no-fault insurers to investigate a Medicare beneficiary's entitlement under the program, and then upon making that investigation, if it is determined, to report that information directly to Medicare. We allege in the complaint plainly that that was not done here. There was no notice ever given to plaintiffs of SINR, Florida Healthcare Plus, and as a result, there would be no basis to bar the claim that's been brought in the proceedings below. When did you get notice from any source, according to the complaint? According to the complaint, notice has been, notice did not come until November of 2015, when based upon our own review of records, we were able to identify that this accident had occurred and the potential for a Medicare Secondary Payer Act recovery. It was only then that a letter was sent to Kingsway Amigo Insurance Company, and in response, we received multiple responses, one of which was an identification of the settlement agreement, which plainly demonstrated the responsibility of the defendant in the case. And that took place when? In November of 2015. And filed subsequently in December of 2015. Let me ask you this. How did MSPA find out about Kingsland here? You say you only really got notice in November through your own efforts. How did you find out about them, and could you have found out about them earlier, about the accident earlier? Well, the question then has really two parts, and it has multiple levels as to whether or not we could have, and whether or not the statute contemplates that we must, in order to bring a cause of action. With respect to the first question, it was a matter of the plaintiff here, MSPA Claims 1 LLC, going back through and requesting accident records and creating a system where it could review a body of data that had not previously been synthesized and made available to MAOs, and which really was not previously possible. Upon reviewing that information, the potential for the Medicare secondary payer situation was found, and the demand was sent. If we look at the actual statutory provisions under which we're operating, it's very clear that the payment which was originally made on behalf of the Medicare beneficiary between April and July of 2012 for the items of services related was immediately conditional upon being made. It was by operation of 2B1, 2BI, a conditional payment subject to reimbursement, and that reimbursement was required by virtue of the statute. The statute places no affirmative obligation upon the MAO to go out and conduct this investigation. In fact, it's just the opposite. Throughout, we see that there are a number of provisions that work together. Most notably, 2BII states that upon demonstration of responsibility by virtue of a judgment or settlement payment or other award or for other reasons that have been made available or that have now become apparent to the primary plan, they have an obligation, an absolute obligation, to reimburse to the proper Medicare trust. It says likewise under B8 that it shall conduct this investigation and that it shall report. So the statutory framework is one intended to take the burden off of Medicare where it had rested for so long before and to place it on to where it could properly be absorbed, as this court noted in Baxter, to the private insurance industry to let them investigate because quite frankly, just as noted in Western Heritage, in March of 2013 when Kingsway Amigo entered into the settlement that's at issue here, they had every opportunity to make a simple inquiry to the Medicare beneficiary as to its Medicare status and as to whether or not she had an MAO and whether or not payments had been made. It elected to remain in the backdrop. So your point with respect to when you found out about, I keep calling them Kingsway, but when you found out about them and whether you had an obligation to investigate is with this sort of switch that occurred to take the burden off of Medicare, put it on the private insurance industry, make Medicare sort of secondary to the primary insurer, that that's why, that policy is what dictates sort of the actual notice provision in the government cause of action statute of limitations that you say you sort of partake of, right? So it's actual notice, not sort of like should have known. Correct. Correct. It's actual notice and it's very clear. It's very, the statute in that respect is unambiguous. It says under BIII, it states that this is from, it must be filed within three years of notice as provided under paragraph eight. Receipt of notice. Receipt of notice under paragraph eight. In the event, what we have alleged clearly in this case is that there was never receipt of notice under paragraph eight and as a result, our claim was timely. And that's, this is a reasonable way of reading the, the claims filing. What we have under, under to you, to go back to Judge Newsom's question a moment with a little bit of a wrinkle, to trigger the three year, if you are right about which provision governs, to trigger the limitations period, does the notice have to be from the insurance company? In other words, if someone, if someone walks into your office and says, hey, this just happened and gives you all the documents that you haven't heard from the person you believe should be responsible for the Medicare secondary payment, do you have receipt of notice under the statute? Under the statute, receipt of notice, it's an interesting hypothetical, but the statute in that, in that respect has again been structured to protect Medicare. It is very clear in that, it's clear. But that provision is silent about. Other notice? Where, no, from where the notice has to come from. It says more, filed not later than three years after the date of the receipt of notice of a settlement, judgment, award, or other payment. And it doesn't say where the notice comes from. It does. It continues pursuant to paragraph eight. Pursuant to paragraph eight. And paragraph eight constructs exactly the type of, or imposes an affirmative obligation of the type of notice that's being referenced. So if you, so if they never provide you notice, there's, you have, you could file a suit 30 years from now if they're still around. Based upon a reading of the, a reading of the complaint. Even if you know, even if you know that X happened and you're like, eh, for litigation reasons, we're going to wait five years, seven years, ten years. Perhaps under those circumstances. You could do that. Perhaps under those circumstances there would be other arguments that would, that would mitigate against it. But under a, a. Sure, you could have, you might have a, I guess if you have a common law latches argument maybe, if that could somehow be read into the statute. But statutorily, you would not be time barred. Statutorily, no. That's not from the, the time from when the, the statute of limitations begins to run on the private cause of action or on the government's cause of action is very, is clear and unambiguous from the receipt pursuant to paragraph, pursuant to paragraph eight. Okay. Is there any evidence here to suggest that you had notice from any source before November of 2015? Again, this is a judgment on the pleadings. So there has been no, there's no evidence of anything yet in the record. This is something that's been, this was decided by Judge King on the basis, on the face of, of the complaint, finding that there was no material dispute as to, as to notice or as to the application of this particular claims filing provision. Right. That's, that's one of the things that the magistrate judge thought inured in your favor, which was this was not summary judgment. This was a motion for judgment on the pleadings where you have to take the complaint as true and draw all reasonable inferences in your client's favor. And so his fallback position was at the very least, this goes on to the next stage of litigation where you get discovery to find out when there was receipt of notice, if at all. That's, that's correct. That's, that's correct. And to go back to your, you know, to go back to your last question, because I recognize that perhaps this view of the, of the statute of limitations may seem overly, may seem overly punitive, but it really, it's, this is. You may, you may be right. This is, some statutes are just written in a way that it leads to result X, even if someone on the street might think, Ooh, that's a weird result. So. And it's because the overriding purpose has is, is very clear that it places the absolute burden of paying for, of paying for items and services whenever possible on a private insurer. So really the, the, the situation should never arise because it is entirely within the settling party's control to avoid the type of circumstances that we have here. Uh, and to make sure that there is certainty with respect to the application of that statute of limitations by complying with the very basic notice requirements that are outlined at paragraph eight. Okay. Mr. Chincone, thank you so much. You reserved your time for rebuttal. Mr. Burdell. Good morning, your honors. Morning. May it please the court. So, so not to throw you, but can I ask you a question? We might be able just to clear away some of the questions at the outset. So to judge Jordan's question to your adversary, let's just begin there. Do you have any basis for disputing that if the claims filing provision is not a standalone bar and what we're concerned about here is just the statute of limitations that he says is borrowed from the government provision, the three year notice based statute of limitations that they're filing as timely. Is that agreed on this record? Uh, it's not necessarily agreed on this record, your honor. I would not give an argument separate than a part of a separate. And that's, that's the interesting thing here. Counsel or excuse me, um, my opponent, uh, in the district court and here wants to push your honors, push the argument away from the plain and unambiguous reading of clause six. And so hold on, have your honors, are you talking about clause six? Are you talking about what I'm calling the claims filing provision? That's close. All right. So yeah, so that I understand your, your argument is that that's a standalone basis, a precondition to recovery. It's a claims filing period. It doesn't have to be a condition precedent, but, but, but, but just so I'm clear, if we get beyond that as to just a statute of limitations based argument, I don't see that you've made I have not made a statute of limitations argument. And it may or may not be timely under the statute of limitations. Okay. But for our purposes here, we're just talking about the claims filing provision and whether that's a pre, a standalone precondition to suit. That's correct, your honor. Got it. Okay, good. Um, uh, and, uh, if I may, the, the, because counsel has, um, raised clause three, a statute of limitations, I haven't argued a statute of limitations. That's not why we're here. Um, and your honors also made a telling argument that, um, if we were to address clause three, what is the period of time that a claim has to be actually filed? That's not how the statute was written. Setting aside clause three, um, clause, if I may go back and if I could just, just lay a little bit of a predicate in responding, uh, to counsel before I get into my main argument. Um, first of all, this is, this is not the government that's making this argument. It's not an MAO making this argument. These are purported assinees of MAOs and the Medicare secondary payer statute was, was written, was laid out as I'm going to go through giving the government, uh, a duty to investigate and act promptly. I'm going to go through all the provisions, but what we're hearing is that they, the government or, or somebody standing in the shoes of an MAO perhaps can sit on their hands forever and lay in the weeds. I understand. Important. Your argument is the fact that, um, the, the statutory scheme was designed to favor the government, right? And they're not in the government, right? No, that's not my argument, Your Honor. The statutory scheme was certainly to favor the government, but there's an even handed, uh, way in which the statute was, was, uh, was presented by Congress, especially with the addition of clause six, which means that the government must act promptly and expeditiously to investigate. And let me go back. Although this is judgment on the pleadings and we're really not supposed to look to extraneous evidence. Let me, Your Honor's asked a real pointed question. Did they have reason to know from the outset that Kingsway Amigo was an auto liability, automobile liability insurer that might have, uh, might have obligations related to this case? The answer to that question is yes. The converse is not true. Kingsway Amigo had no reason to know. Let me tell you why. The police report, but those are all, those are all merits. They are, but, but Your Honor, by the way, clause six is not based on notice. They're, they, the other side reads a notice provision in clause six that's not there. Clearly it says that the government must request payment within three years from the date of rendering of the item or service. Is that what it says? Where's the word must, where's the word must in clause six? As I read it, it says notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may. Well, you're right, Your Honor. Where's the must? No, there's not a must. I, my, my, uh, I, I, I apologize. No, I don't think you're trying to trick me. I actually think that this is like, this is the core of your position. This is the core. And this is the core of the argument is in fact a mandatory provision and I just don't read it that way. Well, that's how, um, uh, this is an important point, Judge Newsom. Um, Judge King addressed this issue, a senior district judge King who I eminently might add is this building is named after. He addressed the fact, the question of is this a permissive, uh, statute? And he said, no, that, that, that would read out the requirement altogether. The reason the word may is there is that the government may or they may not. There's a waiver provision in the Medicare secondary payer statute. Uh, again, it requires the government to act promptly and expeditiously. And I might add when, when the other side says that all the burdens are on, uh, primary payers, that's, that's not true. There, there's even a stat, these statutes like most statutes are written even handedly. There's even handed burdens and obligations. But Judge King, to address your point, Judge Newsom said, no, if we were to read it as permissive, that means that the government may or may not, uh, request payment within three years or they may request payment in four years or they may request payment in 40 years. I thought you said, look, this, you know, some employer benefit plans impose certain limits and without respect to those employer benefit plans, this sub six allows the government to circumvent them in essence. So what your point is addressing is that, uh, this issue came up in the case of, of US versus Shalala and the government took the position that we do not have to respect any time limitation periods of any plan. And the Shalala court said that's, that's clearly not, uh, that they invalidated that. That's clearly not 1994, forgive me, excuse me. That was in 1994 and in 1997 in the balanced budget act, uh, Congress added clause six in response to Shalala and, and determined that, you know, we, the, the government doesn't have to give regard to any limitation in a plan. However, the government, uh, may again, clause six, um, may seek to recover. Does the government have to request payment administratively before it files suit? Assume it's not a private entity like MSP. Does the government have to seek administrative remedies before it files suit under six? I'm not sure that it's a, it's a, it's a, a claims filing period. So unlike the statute of limitations, does it have to, does it have to file a claim? I would say, or can it just sue? So the, the, the words file a claim is sort of loose nomenclature. What it means is that submit a claim for payment. That's what's intended in the legislative history bears this out. What this means is that government, uh, within three years, whether we use may or must or what have you has to seek a recovery of those payments within three years, but without exception, according to legislative history, I want to make sure we're being precise with the language. What you just said is whether we use may or must, the government has to, that's must. Well, again, I would commend to you, your honors, the legislative history cited in, in the brief. The legislative history, your honors, it plainly sets forth the, the purpose of the provision. And that is that this is something the government must follow. There's that word must. Um, here it is, your honor, forgive me. The, from the congressional report in June 24, 1997, the proposal would improve accounting for secondary payer situations by permitting Medicare to notify primary insurers of erroneous payments for up to three years after a claim is filed. What that means is after, yes, after a claim is filed, meaning after, so in the first instance, a patient goes to a hospital, for example, and the hospital renders the care. In this instance, the, this particular individual went to Jackson Memorial Hospital, um, and, uh, issued a, a lien notice upon Kingsway Amigo with the person's name, but it didn't mention her, her age. And the police report, I started to get back to the police report, mentions this person, mentions Kingsway Amigo on the police report. What happened here is that the named insured on the Kingsway Amigo policy gave his vehicle to another gentleman to sell it, not to drive it, but he drove it and he committed a hit and run. So he ran from the scene. This person who was driving the vehicle wasn't supposed to drive it. There's a coverage issue here, but he ran from the scene. The police report are making notations, notes Kingsway Amigo Insurance Company, probably an insurance card in the glove box, if you will. It mentions this particular, there are three individuals in the vehicle that were injured. This person was one of them, doesn't give a birth date. So Kings, they, they had, so the, the, the MAO for whom, uh, this company, MSP purportedly stands in the shoes, had reason to know from the beginning, if you get the police report, contact Jackson Memorial Hospital, MAO's paying that bill. They have reason to know from the beginning to pursue this claim and they have three years to do that. Let me, you're right. If I might read the legislative history further, go ahead. Let me, let me, let's judge. Oh, go ahead. So let me just ask you this. So sub six applies by its terms to the government, right? Yes. Yes, your honor. Okay. So forget it. Forget about the fact that we have a private MAO involved. What sense would it make for the entire statutory scheme to be such that with respect to the government, you've got this hard and fast rule that requires a reimbursement request within three years, hard and fast rule within three years of services without respect to more flexibly to notice that just makes no sense to me. Well, your honor, first of all, that's a great question. And I'm going to, I'm responding to that. Um, but, uh, let me just add one last legislative history and then answer that question. The balanced budget act clarifies that recoveries can be initiated, initiated up to three years after the date of service was furnished to address your question, your honor. It's important to know that the 2013 as part of the smart act clause six was part of the statute added in the balanced budget act of 1997. It's set forth a claims limitation period. So the government must within the three years request payment. And, uh, if they complied with that and another party may or may not responsible who they submitted that request for payment to, um, if they're not responsible, then they won't make the payment. If they are responsible by later entering into a settlement. And by the way, this is not a PIP matter. This is a commercial auto policy case. But if they later settle, the government's fulfilled its obligation by submitting its request for payment within the three years, they've followed the and not allowed it to become stale. And then when there is demonstrated responsibility, according to the all state case in the, in this court, uh, demonstrated responsibility by a settlement or judgment or other means, then, then that's how you establish responsibility against a primary payer. And given the later statute of limitations added in 2013, which, which your honor made it rather open ended, which is that the government has three years from the date of notice, whatever that means to file an action. All right. So I've got two questions, one textual, one practical. The textual question is this, the sub six doesn't just contemplate sort of this shotgun approach of like, uh, requests for reimbursement to anyone who might plausibly be out there. It, it, it seems to contemplate notices to those who are required or responsible. So it seems to contemplate like some, some subset, some sense that, that the person to whom the request is made is in fact responsible, not just like might plausibly be an insurance company, but, but, but, but is in fact responsible. And then practically, I mean, would you want to incentivize this sort of like prophylactic requests for reimbursement to like everybody who might be plausibly in the, in the universe? So practically your honor? No. What practically, what you want to do is incentivize the government from the beginning to move and act expeditiously as this, as the statute is, is worded and written to determine who, for example, in this specific case, Jackson, the MAO, whence they pay that bill in 2012, shortly after the day of the death, to, to, to pay, MAO pays the bill to Jackson Memorial Hospital. They have a, under the, under the statute, under clause six, they have a duty to investigate promptly. All right. Let me, let me take you through the same set of questions with the government at, in, in the place of MSP. Okay. Same timeline as we had here. Okay. By when does the government have to sub, satisfy subsection six? Three, it specifically says. No, no, I'm asking you for a date. Like, oh, the government in this case had to satisfy. Within three years from date of service and specifically in this case. No, it's not date of service, date of, date of which the item or service was furnished. Right. Right. Okay. So what was the date by which the government had to satisfy subsection six? The last date would have been June of 2015. The individual at issue here was involved in the auto accident on April 26th, 2012. And she incurred medical bills through June of 2012. Okay. By when did the government hears June of 2015, your honor. Okay. Thank you. By when did the government have to satisfy subsection three? So that, your honor, our argument is that these provisions, although we're not arguing a statute of limitations, we're arguing that. Well, first of all, Judge King called it a limitation provision, whatever, whatever he thought that meant, but he called it limitation provision a number of times. It is. He didn't call it, you say you're not arguing it's a limitation. No, not a statute of limitations. What is it? It's a claims to be read together, your honor. That's our argument. Okay. So when the other side has an object, go ahead. When did the government, by when did the government have to act to satisfy with the same timeline we have here, subsection three? Uh, although that's not our argument on subsection three, I would argue that they, I want to know how they work together, that the, assuming it was the government, yes. Constructive notice, uh, when they paid that bill. So by when did they have to file a claim in a lawsuit? What was the last date they could file a lawsuit? Uh, would have been, if it was constructive notice, your honor, would you use whatever notice you want? I'm not, if it's constructive notice, it could be when, whenever they learned, but if it's not constructive notice, if it's when there's a settlement or judgment, it's three years from that date. I'm not arguing that this clause of action is, is not timely under a statute of limitations. So at the point in time that the government makes a payment, it, it therefore has constructive notice that someone else should be on the hook. And then the three year period for three begins to run on that date. I'm arguing, I don't know the answer to that question. I'm arguing they have constructive notice as to clause six, to submit a request for payment. And by the way, the regulations support this. The regulations, uh, 422.24 says the government may collect by billing. And then as to MAOs who they purportedly stand in the shoes of 422.108 BND, it says the, the, the MAO may bill. I want to ask about statutory construction, if you don't mind, are you through? No, go ahead. Go right ahead. You seem to know a lot about the history of this statute, which is a mess in my opinion. Uh, but we wouldn't be here. Yes, Your Honor. Um, you, you explained that we need to look at clause six. Clause four is about subrogation rights. Yes, Your Honor. Separate paragraph distinguishing subrogation rights from a, a, a direct cause of action. Yes, Your Honor. We're supposed to give effect to every paragraph of a statute if we can. Is it possible that subrogation rights are the topic of clause six? Because both refer to a primary plan. Um, I'm just asking, what, what is the history of clause four? Uh. With respect to subrogation rights as opposed to the direct action that the government can bring against the primary insurer? Um, Your Honor, clause four was added in an earlier iteration of the MSP Act in 1984. So, um, so, but, but if I'm, just to address your point, the statutes have been written always requiring the government to investigate and to move expeditiously. They're not even supposed to make a payment if there's a primary payer out there. But that's, that's sentence one. That was 1980. In 1982, uh, excuse me, in 1984, they added a, clauses to the conditional payment sentence two, which is the government, uh, uh, may pay, um, even though there's, there's a payment that has been made or, or, or could be made, then it's still a conditional payment. But that could be made. All relates to, um, the government moving expeditiously and the subrogation clause was added in, in 1984. Um, so, it's a bit of a patchwork quilt, Your Honor. Um, the, the clause six wasn't added until 1997. I would submit, Your Honor, as to clause six, it doesn't say that it's just limited to subrogation. No, it's not. No, no. It's not, but clause five is on waiver and I guess it applies to everything. Is that correct? I think that's right, Your Honor. I think all the clauses need to be read together and not in isolation, which is the proper principle of statutory construction. In clause six, I would contend, Your Honor, applies to the direct right of action by the government or subrogation action by the government. And here, the, um, the, the, um, the appellant is arguing that, um, in their briefs, that we're not bound by clause six at all because of, for example, the Tenet case, which they, which they cited to as additional authority. They say, which is really, forgive me, not applicable because Tenet was a very discreet narrow issue of whether an MAO under the private clause of action can go after a medical provider versus a primary plan. The court said, no, you can't go after a medical provider, only a primary plan. That's what clause, what 3A says. But most importantly, the, um, the, the, the, the purpose of the, uh, oh, and I wanted to add, um, I, I mentioned Judge King's interpretation of clause six. Counsel has also, uh, cited additional authority from Ohio in the case called Progressive, where the judge, the district court judge took issue with Judge King's assessment. He too found, uh, he, he, he found it like the magistrate in the court below found that, that clause six was permissive. And, and if you read, uh, senior district court Judge King's it, it, it exposes the whole permissive aspect of this. And I would add that the Ohio district court case cites to a case in Oklahoma. I would ask you to, to your honors to please read these cases. The Ohio court cites a district court judge in Oklahoma, uh, in the Porter case, excuse me, Porter, where, um, the judge in Oklahoma said the government's, uh, reimbursement rights are automatic without the obligation to provide notice. And the, that judge in Oklahoma cites to the regulation 411.21. When you go to 411.21, those are just definitions. They say nothing about clause six. They don't even speak to the issue. So in other words, it's just basically the Oklahoma judge without even citing clause six dispenses with clause six by citing two definitions that don't even address the issue. Mr. Burdell, we've taken you way over your time. So we appreciate your patience with us. If you want to wrap up, you can. Um, I, I would contend your honor. I haven't really gotten into the meat of my argument, which is that, um, the, uh, the statute has always been written requiring the government to act quickly and expeditiously or risk of waiver. And here, what we have, and this is not the government coming in over three years after a request for payment could be made. It's not an MAO coming in. It's a purported SNE. The ship has sailed. The, the statutes can be read together. They have to comply with clause six. And if they do so they've salvaged their right to bring a cause of action and they hadn't, haven't done so. All right, Mr. Burdell, thank you very much. Thank you. Uh, Judge Jordan, with respect to one of your questions, as to when was the, uh, the notice of responsibility here and when is basically the last day that this case could have been, uh, that this could have been brought? When was this timely or, uh, under, under B-I-I-I, uh, the, even if, even if some of the facts that were brought out by the, uh, by the defendant were true, the bottom line is that the notice runs from the time of the demonstrated responsibility. There is no question that the underlying settlement was executed on March 28th of 2013. Certainly the, uh, certainly the plaintiff's assigner in the case could not have had notice of the actual demonstration of responsibility until the settlement had actually been entered into, at which point the defendant became a primary plan under the, under the act. Uh, and as a result, the case is timely, would at minimum be timely, provided it was, uh, in 2016, which it absolutely, which it absolutely was. With respect to, uh, with respect to your, your, your question, Judge Wright, regarding the history of the, of the subrogation right at, uh, at paragraph B-4, the subrogation rights were enacted at the same time as the direct right of action and have been interpreted since that time by the secretary as well as the courts as being an entirely separate bundle of rights. This is what the, this is what 2B provides. It provides a bundle of rights to the Medicare program in order to be able to effectuate recoveries while at the same time imposing affirmative obligations on the primary plans to comply with their obligations under the act at risk of enforcement. As a result, Judge King erred when he announced this as a limitations, uh, period or the imposition of any sort of restriction on Medicare's right to recover. The, uh, the appellee referenced the Shalala opinion and it's important that this B-6 grew out as a direct, was enacted as a direct response to Shalala. In the Shalala opinion, the court at the DC circuit ultimately went, uh, determined that a, that a regulation enacted by the secretary had overstepped the, uh, had overstepped the rulemaking authority of the secretary by doing away or liberating a plan for, uh, the, the government from any claims filing provision. There had been a prior, a prior, uh, decision from the same court, from the DC circuit in Sullivan, which is cited in our, which is cited in our brief in 1992, which said that in fact that regulation, the claims filing, uh, the claims filing installation was, uh, was consistent with the overarching claims, uh, with the overarching purpose of the statute and as a result, uh, a valid ex, a valid exercise of the secretary's authority. In 1992, when that opinion was issued, Congress certainly did not act in response. It was only in 1994 when, when the DC circuit receded from its prior opinion and as a result imposed limitations by virtue of that decision upon Medicare and restricted its Medicare recovery rights that Congress sprung into action and as a result, B-6 was enacted. B-6 thus is not a limitations period, but it's another ascription of a right to Medicare in order to assist it in, uh, in protecting the Medicare trust. That's what this, that's what this is about. That's what the purpose of the statute, um, is intended to achieve and it's against the, and that's the prism through which all of these provisions should be read. And in, in doing so, Congress, uh, Congress clearly and unequivocally stated that this circumstances, Medicare is entitled to, uh, utilize its subrogation right, pursue claims against a, a, a group health plan, which often has very restrictive claims filing periods and it can do so regardless, regardless of whether or not the underlying individual or beneficiary ever complied with those, with those provisions. So Congress, it can bring its right and it can bring, it can bring that out, it can bring that subrogation claim within three years of the date of the item or service. And it's, it, the language of the statute and the language of the statute is, is important. It reference, it references, uh, the request for payment and the request for payment in this instance could certainly be, uh, a lawsuit under B-3. There's nothing, there's nothing that, that prevents it. Um, it's the language of the statute, the language of the statute is very, is clear in that respect and in light of Shalala and the, and the underlying, the underlying history, it's important, uh, to put the claims filing provision in its proper context. Uh, on that point, there is a, there is a portion of the Congressional Budget Office report that's taken, um, severely out of context in, in the briefing and it has been, uh, been pointed to by the defendants as an indication that Congress enacted the, the B-6 in order to safeguard, in order to safeguard the private insurers. And it plainly demonstrates, uh, when in read in full, uh, that in fact there was no such, there was no such intention. The intent, the intent of Congress was to expand the rights of Medicare, uh, was to ensure that it had additional time to pursue these types of claims. And as a result of that additional time, determined that $0.4 billion over five years would be, would be, would hopefully be saved by the Medicare trust. Uh, certainly that would not be, it was not the intent to save less money by insulating, uh, by, uh, private insurers by virtue of a, a claims filing requirement that would be very difficult to comply with. Uh, I do see that I'm over my time, but if the court would indulge me, I have just one, one last point. I don't think that it is, it is, uh, substantively irrelevant that the plaintiff in this case is not the government. And, uh, the first point that the, Appleby's lead point is indicative, uh, of the reason that, that underlies their, uh, the statutory interpretation that they've advanced here. Uh, MAOs are entitled to pursue these sorts of recoveries. It is a, an aggregation like what has been brought by MSP that permits them to level the playing field and pursue, uh, recoveries that were always intended by Congress. Yes. That's not really an argument in rebuttal, but one that you might've wanted to lead off with. So, um, but we thank you very much, very much for your help. We really appreciate it. Thank you. Court is in recess for the week.